PERUVIAN, The (WOOLLY v.). See Case No. 18,031.

---

# Case No. 11,018.

## The PESHTIGO.

[2 Flip. 466; 20 Alb. Law J. 378; 9 Cent. Law J. 285; 25 Int. Rev. Rec. 361.] [1]

District Court, E. D. Michigan. June, 1879.

COLLISION—RECOVERY — LIEN UPON INSURANCE—ABANDONMENT NOT NECESSARY.

1. The owner of a vessel injured by a collision can only recover to the extent of the value of the offending ship and her freight immediately subsequent to the collision. He has no lien or claim upon the insurance received by the owner of such other vessel.
[Cited in Gleason v. First Nat. Bank of Lapeer, 13 Fed. 721.]

2. Where actual total loss occurs, there is no need of formal abandonment to entitle the owners to the benefits of the limited liability act.

Libel in personam, by McMorraw and Fitzgerald, owners of the schooner St. Andrew, against one Dunham, owner of the schooner Peshtigo, to recover damages brought about by a collision of those vessels. Besides the usual allegations of ownership and negligence, the libel set forth that, at the time of the collision, the Peshtigo was insured in the Manhattan and Orient Mutual Insurance Companies; that by reason of such collision and the damage thereby occasioned to the Peshtigo, these companies had become, and were liable to pay to the respondent the full

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 20 Alb. Law J. 378, contains only a partial report.]

amount of their policies, and that libellants had a claim against said companies enforceable by garnishment. Writs of garnishment were sued out against the companies, to which they made returns, admitting liability under the policies, and announcing their willingness to pay whomsoever the court should order. Respondent, Dunham, in his answer, set forth a plea to the effect that, from the effects of this collision, the Peshtigo was sunk, and with her cargo became a total loss. Moreover, that the collision and the injury therefrom were occasioned wholly without his privity or knowledge. To this plea exceptions were filed for insufficiency.

F. H. Canfield, for libellant.
J. J. Speed, for respondent.

BROWN, District Judge. The writs of garnishment in this case can only be supported upon the theory of a lien upon the amount of the policies. If the liability of the owner is limited to the value of the vessel and freight, irrespective of the insurance, there is no claim against him, and consequently nothing which will support the garnishment. Therefore, unless the lien of the libellant upon the vessel is transferred to the insurance money, this suit must fail.

At common law, and also by the civil law and the general law maritime, the owner of a vessel is liable for damages occasioned by the negligence of the master and crew to the full extent of the injury sustained. The ordinary rule of responsibility of the principal for the acts of his agent obtains here, as in every other case; but long before the earliest English act upon the subject, a limit to such liability grew up among the maritime nations of Europe. "The ancient laws of Oleron, Wisbury and the Hanse-Towns contain no provisions on this subject; nor is there any alteration of the rule of the civil law noticed by Roccus; but Vinius, an earlier author, states that by the law of Holland the owners are not chargeable beyond the value of the ship and the things that are in it." Macl. Shipp. 110. This limit of liability was first incorporated in the law of England in the reign of George II., and in that of the United States in the year 1851; but the adjudications under it have not been numerous.

After a careful search for precedents, I have not been able to find a single case in England, and but one in America where the precise question here involved has been passed upon. The absence of English authority is probably due to the fact that, by the law of England, the liability of the owner is limited to the value of the offending ship immediately before the collision, that is, in her undamaged state, while by the American and continental law, the measure of liability is determined by the value of the ship immediately after the collision. In the United States the only reported case upon this point is that of In re Norwich & N. Y. Transp. Co.

[Case No. 10,360], in which the learned judge for the Eastern district of New York discusses the question at length, and comes to the conclusion that the owner is not liable in respect of the insurance moneys.

The continental authorities are full and explicit to the same effect. Article 216 of the Code of Commerce following the Hanseatic ordinance of 1614, and the French ordinance of 1681, declares that "Every owner of a vessel is civilly responsible for the acts of the master in whatever relates to the vessel and the voyage. This responsibility ceases on the abandonment of the vessel and freight." Caumont discusses the question at length in his Dictionary of Maritime Law, page 31, title "Abandonment." And his remarks are worthy of reproduction. Section 54: "When the owner has not seen fit to insure his vessel, it is sufficient that he abandon her with her freight, in order to free himself from responsibility for the engagements of the master. Nothing further is demanded. Now, if the owner has adjudged it prudent to effect an insurance, in consideration of a premium more or less in amount paid by him, it is evident that the lenders upon bottomry and shippers cannot deprive him of the fruits of a wise foresight, and receive the benefits of a contract to which they are strangers." Section 57: "It has, then, been very properly decided: 1. That the owner who, to free himself from loans contracted by the master in the course of the voyage, abandons the ship and freight, is not compelled to account to the lender beyond that for the proceeds of the insurance underwritten upon the ship. (Aix, Feb. 8, 1832.) 2. That the proprietor of the ship who effects an abandonment to the shipper is not held as including the value of the insurance. (Rennes, Aug. 12, 1822.)" Section 57: "How could the owner of the ship be held to include in his abandonment the amount of insurance he has taken the precaution to put upon the vessel? Is not this insurance the consideration of the premium he has paid? Can this be affected by his guaranty of obligations contracted by the master? Ought not the relations established by law between the owner of the ship and the lender or shipper to be maintained quite independent of the contracts of insurance which each of them may make?" See, also, Bedarride (Code du Commerce, § 295): "In the discussion which the projet de loi of 1841 called forth, certain courts, notably that of Aix, urged that the abandonment should include, besides the ship and freight, the amount of insurance which the owner had bargained for. This claim, which had already been made before the courts, was formally condemned."

So, too, Defresquet, in his pamphlet upon the law of collisions at sea, discussing the right of abandonment, observes: "We remark, in conclusion, that if an abandonment has been made of a ship sunk by collision, the owner is not obliged to abandon at the

same time the amount of his insurance. This was proposed at one time, but rejected."

These authorities seem to me to announce a sound principle of law and to be fortified by unanswerable reasons. The liability of the owner is limited to the value of the ship and freight. That liability ought not to be extended by a contract of indemnity made by him with a third party; in other words, the right of the injured party to reimbursement ought not to be dependent upon the contingency of a contract to which he was not a party, and with which he has no concern. He loses nothing which he would not have lost if the insurance had not existed. The contract of insurance is personal in its nature, and is a mere special agreement with a party seeking to secure himself against apprehended loss on account of his interest in a particular subject matter, and not at all incidental to, or transferable with, the subject matter. May, Ins. § 6.

The shipper has no lien upon it for the non-delivery of his cargo. Clark v. Brown, 7 La. Ann. 342. Nor can even the master or crew have recourse to it in case of the loss of the vessel. Eymar v. Lawrence, 8 La. 42. See, also, Thayer v. Goodale, 4 La. 222; Steele v. Ins. Co., 17 Pa. 290; White v. Browne, 2 Cush. 412; Stillwell v. Staples, 19 N. Y. 401.

Further objection is made to the plea in this case, upon the ground that the owner has not taken the appropriate proceedings under section 4284, and transfered his interest in the vessel and freight for the benefit of the libellants to a trustee as required by section 4285. It is a sufficient answer to this to say that the plea sets forth a total loss of the vessel and cargo from which would also follow a total loss of freight, and that no formal abandonment is necessary in such cases. 2 Pars. Mar. Ins. 107, 111, 120; Brown v. Wilkinson, 15 Mees. & W. 391.

Exceptions to the plea overruled.